## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

THE UNITED STATES OF AMERICA,

       Plaintiff,

       v.

LIMA REFINING COMPANY

       Defendant.

Case No. 3:24-cv-1659

Judge

## **COMPLAINT**

1.    The United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## **NATURE OF ACTION**

2.    This is a civil action brought by the Plaintiff against the Lima Refining Company ("LRC") pursuant to Sections 113(b) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7413(b) for violations of the CAA at LRC's petroleum refinery located at 1150 South Metcalf Street in Lima, OH 45804 (the "Lima Refinery").  Plaintiff seeks the assessment of civil penalties and appropriate injunctive relief based on these violations.

3.    This Complaint alleges past and ongoing violations of the following CAA statutory and regulatory requirements applicable to the Lima Refinery:

1

a.  The New Source Performance Standards ("NSPS") at 40 C.F.R. Part 60, Subpart QQQ, promulgated pursuant to Section 111 of the CAA, 42 U.S.C. § 7411;

b.  The National Emission Standards for Hazardous Air Pollutants ("NESHAP") promulgated at 40 C.F.R. Part 61, Subpart FF, promulgated pursuant to Section 112 of the CAA, 42 U.S.C. § 7412;

c.  The NSPS and NESHAP general provisions promulgated at 40 C.F.R. Part 60, Subpart A, and 40 C.F.R. Part 61, Subpart A; and

d.  The portions of the "Title V" operating permit for the Lima Refinery that adopt, incorporate, or implement the provisions cited in Subparagraphs 3.a–3.c.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has personal jurisdiction over LRC, which does business in Ohio and in this District.

5.    Venue is proper in this District pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b) and 28 U.S.C. §§ 1391(b), (c), 1395(a), because the alleged violations in this Complaint occurred and are occurring at the Lima Refinery which is located in this District.

## AUTHORITY

6.    Authority to bring this action is vested in the United States Department of Justice pursuant to Sections 113(b) and 305(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7605(a), and under 28 U.S.C. §§ 516 and 519.

## NOTICE

7.    EPA issued a Finding of Violation notice ("FOV") on September 27, 2022.   The FOV was sent to LRC and to the Ohio Environmental Protection Agency.  A copy of the FOV is attached hereto as Exhibit 1.

8.     Notice of the commencement of this action was given to the State of Ohio at least thirty (30) days prior to the filing of this Complaint as required by Section 113(a)(1) and (b) of the CAA, 42 U.S.C. § 7413(a)(1) and (b).

## DEFENDANT

9.     Defendant LRC is a corporation formed under the laws of the State of Delaware and doing business in the State of Ohio.  LRC is a wholly-owned subsidiary of Canadian-based corporation Cenovus Energy, Inc.

10.     LRC is, and at all times relevant to the Complaint has been, the "owner" and "operator" of the Lima Refinery, within the meaning of Sections 111(a) and 112(a) of the CAA, 42 U.S.C. §§ 7411(a) and 7412(a).

11.     LRC is a "person" as defined in Sections 113(b) and 302(e) of the CAA, 42 U.S.C. §§ 7413(b) and 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

### The Clean Air Act

12.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. 42 U.S.C. § 7401(b)(1).

### New Source Performance Standards

13.     Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires EPA to publish and periodically revise a list of categories of stationary sources including those categories that, in EPA's judgment, cause or contribute significantly to air pollution which may reasonably be anticipated to endanger public health or welfare.

14.     Once a category is included on the list, Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires EPA to promulgate a federal standard of performance for new sources within the category, also known as an NSPS.

15.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating that source in violation of an NSPS after the effective date of the NSPS applicable to such source.

16.     "New source" is defined as any stationary source, the construction or modification of which is commenced after the publication of the NSPS regulations or proposed NSPS regulations applicable to such sources.  42 U.S.C. § 7411(a)(2).  "Stationary source" is defined as a building, structure, facility, or installation which emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

17.     The New Source Performance Standards are located in Part 60 of Title 40 of the Code of Federal Regulations.

<u>NSPS General Provisions</u>
<u>40 C.F.R. Part 60, Subpart A</u>

18.     Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA promulgated NSPS Subpart A, which are general NSPS provisions that apply to the owner or operator of any stationary source which contains an "affected facility," the construction or modification of which is commenced after the publication of any NSPS (or, if earlier, the date of publication of any proposed standard) applicable to that facility.  40 C.F.R. § 60.1.  An "affected facility" is defined as any apparatus to which a standard is applicable.  40 C.F.R. § 60.2.

19.     NSPS Subpart A applies to all affected facilities, including associated air pollution control equipment, and requires that, at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and

4

operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 60.11(d).

20.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits an owner or operator of a new source from operating any new (*i.e.*, constructed or modified) source in violation of an NSPS after the effective date of the NSPS applicable to such source.

<u>NSPS for VOC Emissions from Petroleum Refinery Wastewater Systems</u>
<u>40 C.F.R. Part 60, Subpart QQQ</u>

21.     Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA promulgated Subpart QQQ.  Each individual drain system ("IDS"), oil water separator, and aggregate facility located in a petroleum refinery for which construction, modification, or reconstruction commenced after May 4, 1987 is a designated affected facility subject to Subpart QQQ. 40 C.F.R. § 60.690(a).

22.     An "aggregate facility" is an IDS together with ancillary downstream sewer lines and oil-water separators, down to and including the secondary oil-water separator, as applicable. An IDS includes all process drains connected to the first common downstream junction box and includes all such drains and common junction boxes together with their associated sewer lines and other junction boxes, down to the receiving oil-water separator.  An "oil-water separator" is wastewater treatment equipment used to separate oil from water consisting of a separation tank, which also includes the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers.  40 C.F.R. § 60.691.

23.     Each drain within a Subpart QQQ IDS must be equipped with water seal controls which means a seal pot, p-leg trap, or other type of trap filled with water that has a design capability to create a water barrier between the sewer and the atmosphere.  40 C.F.R. § 60.692-

5

2(a)(1).  Drains in both active and inactive service must be inspected at specified intervals, and repaired as soon as practicable, but not later than 24 hours of detection of low water levels or missing or improperly installed caps.  40 C.F.R. § 60.692-2(a)(2)–(5).

24.     Each IDS junction box, defined as a manhole or access to a wastewater sewer system line, must be equipped with a cover that has a tight seal around the edge in place at all times, except during inspection and maintenance.  40 C.F.R. § 60.692-2(b)(1)–(2).  Junction boxes must be inspected semiannually, and repairs must be attempted as soon as practicable, but not later than 15 calendar days after a broken seal or gap is identified.  40 C.F.R. § 60.692-2(b)(3)–(4).

25.     The unburied portion of each sewer line, defined as a lateral, trunk line, branch line, ditch, channel, or other conduit used to convey refinery wastewater to downstream components of a refinery wastewater treatment system (excluding buried, below-grade sewer lines), must be inspected semiannually and repaired as soon as practicable but not later than 15 days after identification of cracks, gaps, or other problems.  40 C.F.R. § 60.692-2(c)(1)–(3).

26.     40 C.F.R. Part 61, Subpart FF authorizes refinery owners or operators to comply with the alternative standards for oil-water separators set forth at 40 C.F.R. § 60.693-2(a) in Subpart QQQ.  40 C.F.R. § 61.352(a).

<u>National Emission Standards for Hazardous Air Pollutants (NESHAP)</u>

27.     Section 112 of the CAA sets forth a national program for the control of hazardous air pollutants ("HAPs").  42 U.S.C. § 7412.

28.     As originally set forth in the CAA Amendments of 1970, Section 112 directed EPA to publish a list of HAPs.  A HAP was defined as "an air pollutant to which no ambient air quality standard is applicable and which in the judgment of the Administrator may cause, or

contribute to, an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness."  42 U.S.C. § 1857c-7 (1971).

29.     At that time, Congress directed EPA to establish HAP standards that provided "an ample margin of safety to protect the public health from such hazardous air pollutant."  *Id*.

30.     Between 1970 and 1990, EPA listed eight substances as HAPs and promulgated emissions standards for seven of them.  H.R. Rep. No. 101-490, pt 1, at 151 (1990).

31.     EPA listed benzene as a HAP under Section 112 in 1977, 42 Fed. Reg. 29332 (June 8, 1977), and later promulgated standards related to the control of benzene in waste operations.  55 Fed. Reg. 8292 (Mar. 7, 1990).

32.     Thereafter, in 1993, EPA finalized the regulations, 58 Fed. Reg. 3072 (Jan. 7, 1993), and published them at 40 C.F.R. Part 61, Subpart FF.  *See* 40 C.F.R. §§ 61.340–61.359. These regulations are commonly referred to as the "Benzene Waste Operations NESHAP," "BWON," or "Subpart FF."

33.     Though the Clean Air Act Amendments of 1990 replaced the then-existing Section 112 and established a new program for the control of HAPs, H.R. Rep. No. 101-490, pt 1, at 324 (1990), the regulations then in existence under the original Section 112 (such as Subpart FF) remained in full force and effect.  *See* 42 U.S.C. § 7412(q)(1).

34.     After the effective date of any emission standard, limitation, or regulation promulgated pursuant to Section 112 of the CAA, no person may operate a source in violation of such standard, limitation, or regulation.  42 U.S.C. § 7412(i)(3).

<u>NESHAP General Provisions</u>
<u>40 C.F.R. Part 61, Subpart A</u>

35.     Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, as it existed before the 1990 CAA Amendments, EPA promulgated 40 C.F.R. Part 61, Subpart A, which are general

7

provisions applicable to all sources that are subject to the Part 61 NESHAP Regulations.  *See* 40 C.F.R. §§ 61.01–61.19.

36.    NESHAP Subpart A obligates the owner or operator of each stationary source to maintain and operate the source, including associated equipment for air pollution control, in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 61.12(c).

37.    After the effective date of any standard, no owner or operator shall operate a new stationary source subject to that standard in violation of the standard, except under an exemption granted by the President under Section 112(c)(2) of the Act as in effect prior to the 1990 Amendments (Section 112(i)(4) of the present Act).  40 C.F.R. § 61.05.

Benzene Waste Operations NESHAP
40 C.F.R. Part 61, Subpart FF

38.    Subpart FF applies to petroleum refineries.  40 C.F.R. § 61.340(a).

39.    Under Subpart FF, a facility is required to tabulate the total annual benzene ("TAB") in its wastewater.  If the TAB is over 10 megagrams ("Mg") (11 ton/yr), the refinery is required to select a control option that will require control of all waste streams, or control of certain selected waste streams.

40.    Under the control option known as the "6 BQ Compliance Option," a facility must control all benzene-containing wastes except for up to 6.0 Mg/yr (6.6 ton/yr) of aqueous benzene-containing wastes.  40 C.F.R. § 61.342(e).

41.    Owners and operators must calculate the benzene quantity for controlled and uncontrolled waste streams to evaluate their compliance with the 6 BQ Compliance Option. 40 C.F.R. §§ 61.342(e)(2), 61.355(k).

8

42.     Owners and operators must ensure that the following control equipment is designed to operate with the no detectable emissions ("NDE") standard set forth in Subpart FF, defined as a reading of less than 500 parts per million by volume ("ppmv") above background: the cover and all openings on the fixed-roofs of tanks; the cover and all openings on surface impoundments; the cover and all openings on each drain system opening; the cover and all openings on the fixed-roof for each oil-water separator.  40 C.F.R. §§ 61.343(a)(1)(i)(A), 61.344(a)(1)(i)(A), 61.346(a)(1)(i)(A), 61.347(a)(1)(i)(A).  The foregoing control equipment must be tested at least annually to evaluate compliance with the NDE standard.  *Id.*  Monitoring must comply with Method 21 from Appendix A of 40 C.F.R. Part 60.  40 C.F.R. § 61.355(h).

43.     Engineering design documentation for all control equipment installed on the waste management unit (*e.g.*, tanks, surface impoundments, oil-water separators, IDSs) ("WMUs") must be prepared and maintained for the life of the control equipment.  40 C.F.R. § 61.356(d).

44.     Unless implementing alternative standards, owners and operators must install, operate and maintain a closed vent system that routes all organic vapors vented from tanks, surface impoundments, drain systems, and oil water separators to a control device.  40 C.F.R. §§ 61.343(a)(1), 61.344(a)(1), 61.346(a)(1), and 61.347(a)(1).  A "control device" is a closed combustion device, vapor recovery system, or flare.  40 C.F.R. § 61.341.

45.     Under an alternative standard for tanks set forth at 40 C.F.R. § 61.343(b), devices on a tank which vent directly to the atmosphere may be used if each device remains in a closed, sealed position during normal operations, except in certain narrowly defined circumstances. 40 C.F.R. § 61.343(b)(3).

### Title V Permit Program

46.     Title V of the Clean Air Act, 42 U.S.C. §§ 7661–7661f, establishes an operating permit program for certain sources, including major sources and sources subject to Sections 111 (NSPS program) or 112 (NESHAP/MACT program) of the CAA. 42 U.S.C. § 7661a(a). The purpose of Title V is to ensure that all "applicable requirements" that a source is subject to under the CAA are collected in one permit. 42 U.S.C. § 7661c(a).

47.     Pursuant to Section 502(b) of the CAA, 42 U.S.C. § 7661a(b), EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a Title V permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

48.     EPA granted final full approval to the Ohio Title V operating permit program on November 20, 2003. *See* 68 Fed. Reg. 65401 (Nov. 20, 2003). The program became effective on December 22, 2003. *See* 40 C.F.R. Part 70, Appendix A.

49.     Section 502(a) of the CAA, 42 U.S.C. § 7661a(a), and the implementing regulations at 40 C.F.R. §§ 70.1(b) and 70.7(b), provide that, after the effective date of any permit program approved or promulgated under Title V of the CAA, no source subject to Title V may operate except in compliance with a Title V permit.

50.     All terms and conditions of a Title V permit are federally enforceable unless specifically designated in the permit as not being federally enforceable. 42 U.S.C. § 7413(b); 40 C.F.R. § 70.6(b).

51.     At all times relevant, the LRC operated the Lima Refinery under Title V Air Pollution Control Permit No. P0121398 issued by the Ohio Environmental Protection Agency on

10

September 11, 2018 under its EPA-approved Title V air operating permits program.  That permit

superseded prior permit P0126064.

**GENERAL PROVISIONS**

52.     LRC is the "owner or operator," within the meaning of the CAA, of the Lima

Refinery.

53.     The Lima Refinery is, and at all times relevant herein has been, a "petroleum

refinery" within the meaning of Subpart QQQ and Subpart FF.  40 C.F.R. §§ 60.691, 61.341.

54.     The Lima Refinery is a "source," a "stationary source," and a "major source,"

within the meaning of the CAA, the NSPS program and regulations, the NESHAP program and

regulations, and the Title V program and regulations.

55.     The Lima Refinery operates the NESHAP Oil/Water Separator System upstream

of the Wastewater Treatment Plant (collectively "Wastewater System") which manages and

treats its benzene waste streams.

56.     At all relevant times, the Lima Refinery contained individual "affected facilities"

that are subject to regulation pursuant to Subpart QQQ.

57.     EPA conducted an inspection of the Lima Refinery between June 27–30, 2022

("Inspection").

58.     Following the Inspection, LRC produced additional documents to EPA.

59.     Following the Inspection, LRC conceded that it could not produce NDE

engineering documentation for all control equipment installed on waste management units

subject to 40 C.F.R. §§ 61.343–61.347.

60. Based on the Inspection findings, LRC's subsequent productions, reporting required under Subpart QQQ and Subpart FF, and further investigation, LRC violated the CAA and its implementing regulations as set forth below.

CLAIM 1
Violation of 40 C.F.R. § 61.342(e)
Failure to Comply with the 6 BQ Compliance Option under Subpart FF
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

61. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

62. As the owner and operator of the Lima Refinery, LRC is, and at all relevant times has been, subject to Subpart FF.

63. Construction, modification, or reconstruction commenced at the Lima Refinery after May 4, 1987.

64. The Lima Refinery is a "petroleum refinery" and a "facility" within the meaning of 40 C.F.R. § 61.341.

65. At all relevant times, the Lima Refinery had a TAB greater than or equal to 10 Mg/yr as determined by the procedure set forth in 40 C.F.R. § 61.342(a).

66. At all relevant times, LRC elected to comply with the 6 BQ Compliance Option set forth in 40 C.F.R. § 61.342(e).

67. Pursuant to 40 C.F.R. § 61.342(e), the annual benzene quantity for uncontrolled aqueous benzene-containing wastes must be equal to or less than 6.0 Mg/yr.

68. Between at least 2018 and 2022, LRC routed each benzene waste stream listed in its TAB to an uncontrolled equalization tank ("E-Tank") that discharged the uncovered effluent stream to aeration basins for biodegradation treatment, exposing the stream to the atmosphere (and volatilization) before treatment could be completed.

12

69.     During the Inspection, EPA observed that Catch Basin 1, part of a Subpart FF IDS, was uncovered.

70.     As set forth in more detail below, each WMU upstream of the E-Tank, including induced nitrogen gas floats ("IGFUs"), corrugated plate interceptor units ("CPIs"), and American Petroleum Institute separators ("APIs") is also uncontrolled.

71.     As a result, the benzene quantity for each waste stream is calculated (and counted against the 6.0 Mg/y limit) when it first enters the Lima Refinery's Wastewater System.  *See* 40 C.F.R. § 61.355(k)(2).

72.     From at least 2018 to the present, LRC failed to comply with the selected 6 BQ Compliance Option in violation of 40 C.F.R. § 61.342(e).

73.     Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

74.     For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

<u>CLAIM 2</u>
<u>Violation of 40 C.F.R. § 61.347(a) and (b).</u>
<u>Failure to Operate Oil-Water Separators in Compliance with Subpart FF</u>
<u>Violation of Title V Permit Provisions that Implement and Enforce these Requirements</u>

75.     Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

76.     Defendant operated several fixed roof oil-water separators at the Lima Refinery, including the IGFUs, CPIs, and APIs.

77.     The IGFUs, CPIs, and APIs are WMUs and oil-water separators within the meaning of 40 C.F.R. § 61.341.

78.     The IGFUs, CPIs, and APIs are required to have a fixed-roof and closed-vent system that routes all organic vapors from the oil-water separators to a control device.  40 C.F.R. § 61.347(a)(1).

79.     The cover and all openings on the fixed-roof must be designed to be operated with the NDE standard, measured initially and annually thereafter.  40 C.F.R. § 61.347(a)(1)(i).

80.     Each fixed-roof opening must be maintained in a closed, sealed position at all times waste is in the oil-water separator, except in certain narrowly defined circumstances. 40 C.F.R. § 61.347(a)(1)(i)(B).

81.     Compliance with the NDE standard is determined by Method 21 monitoring at specified intervals.  *See* 40 C.F.R. §§ 61.347(a)(1)(i), 61.355(h).

82.     Since 2018, LRC failed to route all organic vapors from the IGFUs, CPIs, and APIs to a control device in violation of 40 C.F.R. § 61.347(a)(1).

83.     Since 2018, LRC failed to ensure that the cover and all openings on the fixed-roofs of the IGFUs, CPIs, and APIs operated in compliance with the NDE standard in violation of 40 C.F.R. § 61.347(a)(1)(i)(A).

84.     Since 2018, LRC failed to ensure that all fixed roof openings on the IGFUs, CPIs, and APIs were maintained in a sealed position in violation of 40 C.F.R. § 61.347(a)(1)(i)(B).

85.     Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

86.     For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is

subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

CLAIM 3
Violation of 40 C.F.R. § 61.343(a)
Failure to Operate Tanks in Compliance with Subpart FF
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

87.     Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

88.     Defendant operated several fixed-roof tanks at the Lima Refinery, including the E-Tank and fixed roof slop oil tank 84 ("TK-84") as part of the Wastewater System.

89.     The E-Tank and TK-84 are WMUs and tanks within the meaning of 40 C.F.R. § 61.341.

90.     The E-Tank and TK-84 are required to have a fixed-roof and closed-vent system that routes all organic vapors from the oil water separators to a control device.  40 C.F.R. § 61.343(a)(1).

91.     The cover and all openings on the fixed-roofs are required to be designed to be operated with NDE, measured initially and annually thereafter.  40 C.F.R. § 61.343(a)(1)(i).

92.     Each fixed-roof opening shall be maintained in a closed, sealed position at all times waste is in the tank, except in certain narrowly defined circumstances.  40 C.F.R. § 61.343(a)(1)(i)(B).

93.     Compliance with the NDE standard is determined by Method 21 monitoring at specified intervals.  *See* 40 C.F.R. §§ 61.343(a)(1)(i)(A), 61.355(h).

94.     Since 2018, LRC failed to route all organic vapors from the E-Tank and TK-84 to a control device in violation of 40 C.F.R. § 61.343(a)(1).

95.    Since 2018, LRC failed to ensure that the cover and all openings on the fixed-roofs of the E-Tank and TK-84 operated in compliance with the NDE standard in violation of 40 C.F.R. § 61.343(a)(1)(i)(A).

96.    Since 2018, LRC failed to ensure that all fixed-roof openings on the E-Tank and TK-84 were maintained in a sealed position in violation of 40 C.F.R. § 61.343(a)(1)(i)(B).

97.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

98.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

CLAIM 4
Violation of 40 C.F.R. § 61.355(h)(1)
Failure to Properly Test for Compliance with NDE Standard Under Subpart FF
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

99.    Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

100.   Under Subpart FF, LRC must ensure compliance with the NDE standard applicable to tanks, surface impoundments, containers, IDSs, oil-water separators, and closed-vent systems and control devices by monitoring in compliance with Method 21 and the procedures set forth at Appendix A of 40 C.F.R. Part 60.  40 C.F.R. § 61.355(h)(1).

101.   Among other things, 40 C.F.R. Part 60, Appendix A-7 (Test Methods 19-25E) details the proper Method 21 test protocol.  To comply with Method 21 sample collection protocol, an operator must place the toxic vapor analyzer probe inlet at the surface of the component interface and move it along the interface periphery while observing the instrument

readout.  If an increased meter reading is observed, the operator must sample the interface where leakage is indicated until the maximum meter reading is obtained by leaving the probe inlet at this maximum reading location for approximately two times the instrument response time.  *Id.* §§ 8.3.1 and 8.3.2.

102.    Between 2018 and the Inspection, LRC failed to conduct its Method 21 testing in accordance with the required test methods in violation of 40 C.F.R. § 61.355(h)(1).

103.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

104.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

CLAIM 5
Violation of 40 C.F.R. § 61.356(d)
Failure to Maintain Engineering Design Documentation Under Subpart FF
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

105.    Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

106.    Under Subpart FF, LRC is required to maintain engineering design documentation for all control equipment installed on WMUS subject to Subpart FF that are required to use such control equipment (*i.e.*, tanks, surface impoundments, containers, IDSs, and oil-water separators).  40 C.F.R. § 61.356(d).

107.    After the Inspection, LRC could not produce the required engineering documentation for control equipment installed on its WMUs.

17

108.    Between at least 2018 and the Inspection, LRC failed to create and maintain engineering documentation for control equipment installed on any WMU at the Lima Refinery in violation of 40 C.F.R. § 61.356(d).

109.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

110.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

CLAIM 6
Violation of 40 C.F.R. § 60.692-2
Failure to Operate IDSs in Compliance with Subpart QQQ
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

111.    Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

112.    LRC operates IDSs within the Wastewater Treatment System at the Lima Refinery which were constructed, modified, or reconstructed after May 5, 1987.

113.    Under Subpart QQQ, LRC must equip each IDS drain with water seal controls capable of creating a water barrier between the sewer and the atmosphere.  40 C.F.R. § 60.692-2(a)(1).

114.    Under Subpart QQQ, LRC must ensure that each IDS junction box, including manholes, is equipped with a cover and has a tight seal around the edge that is kept in place at all times, except during inspection and maintenance.  40 C.F.R. § 60.692-2(b)(1), (2).

115.    Under Subpart QQQ, LRC must ensure that each IDS sewer line is not open to the atmosphere and covered or enclosed in a manner so as to have no visual gaps or cracks in joints seals, or other emission interfaces.  40 C.F.R. § 60.692-2(c)(1).

116.    During the Inspection, EPA observed numerous drains without water seals and/or with oil sheens indicating the failure of the barrier between the sewer and the atmosphere.

117.    From at least 2019 to the Inspection, LRC failed to equip each IDS drain with water seal controls in violation of 40 C.F.R. § 60.692-2(a)(1).

118.    During the Inspection, EPA observed numerous IDS's junction boxes with cracked seals, no seals, no covers, and/or openings on the seal.

119.    From at least 2019 to the Inspection, LRC failed to equip each IDS's junction box with a cover and a tight seal around it in violation of 40 C.F.R. § 60.692-2(b)(1), (2).

120.    During the Inspection, EPA detected fugitive VOC emissions emanating from the aboveground portion of a lift station sewer line.

121.    From at least the 2019 to the Inspection, LRC failed to ensure each sewer line was not open to the atmosphere and covered or enclosed so as to have no visual gaps or cracks in joints, seals or other emission interfaces s in violation of 40 C.F.R. § 60.692-2(c)(1), (2).

122.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

123.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

CLAIM 7
Violation of 40 C.F.R. § 60.692-2
Failure to Conduct IDS Inspections in Compliance with Subpart QQQ
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

124.    Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

125.    Under Subpart QQQ, LRC must inspect certain IDS components at specified intervals: monthly visual or physical inspections for each drain in active service; monthly visual inspections for junction boxes; and semiannual inspections of the unburied portions of sewer lines.  40 C.F.R. § 60.692-2(a)(2), (b)(3), (c)(2).

126.    LRC must also certify semiannually that all required inspections have been carried out.  40 C.F.R. § 60.698(b)(1).

127.    In 2019, LRC reported 44 instances of missed inspections in its semiannual Subpart QQQ report required by 40 C.F.R. § 60.698(c) in violation of 40 C.F.R. § 60.692-2.

128.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

129.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

20

CLAIM 8
Violation of NESHAP and NSPS General Requirements,
Failure to Operate Consistent with Good Air Pollution
Control Practices for Minimizing Emissions,
Violation of Title V Permit Provisions that Implement and Enforce these Requirements

130.    Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

131.    LRC was and is required to operate the Lima Refinery, including associated equipment for air pollution control, in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 61.12(c).

132.    LRC was and is required, at all times, including periods of startup and shutdown, to the extent practicable, to maintain and operate any affected facility within the Lima Refinery, including associated air pollution control equipment, in a manner consistent with good air pollution control practice for minimizing emissions.  40 C.F.R. § 60.11(d).

133.    The requirement to operate in accordance with good air pollution control practices set forth in the NSPS and NESHAP general provisions is incorporated by reference into LRC's Title V permit.

134.    During the Inspection EPA measured exceedances of the NDE standard using Method 21 and OGI monitoring at Tank 172 and Tank 173.

135.    During the Inspection, EPA observed that the metal cover of the IGFUs was partially collapsed, resulting in detectable emissions above the NDE standard, and observable through OGI.

136.    Since at least 2018 to the Inspection, four effluent streams from the E-tank were exposed to the atmosphere prior to treatment in the enhanced biodegradation unit resulting in volatilization.

137.    During the Inspection, EPA observed IDS drains and junction boxes with an oil or hydrocarbon layer where water seal controls were required.

138.    During the Inspection, EPA observed peeled caulking at numerous IDS drains and junction boxes.

139.    The above-described actions and omissions constitute the failure by LRC to exercise good air pollution control practices in violation of 40 C.F.R. § 60.11(d) and 40 C.F.R. § 61.12(c).

140.    Unless restrained by an order of the Court, these violations of the CAA and its implementing regulations will continue.

141.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, as amended, Defendant is subject to injunctive relief and civil penalties of up to $121,275 for violations per day for each violation of the CAA occurring after November 2, 2015, where penalties are assessed on or after December 27, 2023.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

142.    Enjoin LRC from operating the Lima Refinery except in accordance with the statutory and regulatory requirements cited herein;

143.    Order LRC to immediately comply with the statutory and regulatory requirements cited herein;

144.    Order LRC to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged herein;

145.   Assess civil penalties against LRC for up to the amounts provided by applicable law;

146.   Award Plaintiff its costs and expenses incurred in this action; and

147.   Grant such other and further relief as the Court deems just and proper.


Respectfully Submitted,

THE UNITED STATES OF AMERICA

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United State Department of Justice

s/ Zachary N. Moor
ZACHARY N. MOOR (MA Bar No. 681469)
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Tel: (202) 514-4185
Fax: (202) 514-8865
Email: zachary.moor@usdoj.gov

REBECCA C. LUTZKO
UNITED STATES ATTORNEY

s/ Guillermo J. Rojas
GUILLERMO J. ROJAS (OH 0069882)
Assistant United States Attorney
Four Seagate, Suite 308
Toledo, OH 43604-2624
Voice: 419-259-6376
Fax: 419- 259-6360
Guillermo.Rojas@usdoj.gov

OF COUNSEL:

MARY McAULIFFE
SOPHIE GRUETERICH
Associate Regional Counsel
United States EPA, Region 5
77 W. Jackson Blvd.
Chicago, IL 60604